**EMPLOYERS INSURANCE
OF WAUSAU, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 293–89C.

United States Claims Court.

July 29, 1991.

Robert G. Watt, with whom were David Romm and Tara Vautin, McLean, Va., for plaintiff.

Odessa P. Jackson, with whom were David M. Cohen, Director, Commercial Litigation Branch, and Stuart M. Gerson, Asst. Atty. Gen., Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## ORDER

SMITH, Chief Judge.

This case arises under a surety's dispute with the United States Navy (Navy) over the Navy's handling of a contract between it and a third-party contractor, Kingsway Chemical Equipment, Inc. (Kingsway), for the repair and refurbishing of an overhead electric crane. The plaintiff, Employers Insurance of Wausau (Wausau) alleges jurisdiction under both the Tucker Act, 28 U.S.C. § 1491 (1982), and the Contract Disputes Act, 41 U.S.C. § 601 et seq. (1982). After careful consideration of the defendant's Motion for Reconsideration, a review of the court's opinion of March 30, 1990, and a further analysis of the law and facts on which it was based, the court must deny the defendant's Motion for Reconsideration.

## FACTS

Briefly stated, the facts are as follows. In January, 1984 the Navy awarded Kingsway a $698,450.00 contract for the repair and reconditioning of an overhead traveling crane. Kingsway was to complete work by February 5, 1985. Beginning around March, 1984, Kingsway fell behind in its contractual duties. It did not submit acceptable schedules, shop drawings, or other documents as required. In October, 1984 the Navy sent two cure letters to Kingsway. This was the first of many notifications to Kingsway that its work was unsatisfactory. Another letter followed on November 7, 1984.

The Navy received various indications that Kingsway was unable to meet its obligations. On April 19, 1985, Kingsway told the Navy that it was having difficulty making payments. Ten days later Wausau called the Navy, requesting that payments be sent to it and not Kingsway because Kingsway was having financial difficulties. The Navy denied the request, stating that Wausau was not a "bona fide lending insti-

tution" under the Assignment of Claims Act.

In the summer of 1985 Kingsway assigned payments to a bank. Wausau wrote to the Navy on July 26, 1985, informing the Navy of its fears about Kingsway's ability to finish the project and pay its subcontractors. The government did not respond to the letter. Further, it took no apparent action to minimize Wausau's liability.

On April 10, 1986, the Navy terminated the contract for failure to make progress and for default in performance. The Navy made a demand on Wausau to honor its performance bond obligations. The Navy and Wausau subsequently entered into a takeover agreement. On June 13, 1988, Wausau submitted what it claims was a certified claim to the contracting officer for $533,178.25. Wausau alleged abuse of discretion by the Navy. Wausau filed the initial complaint on May 23, 1989 under the CDA.

On February 13, 1990, the government filed a Motion to Dismiss, alleging lack of subject-matter jurisdiction and failure to state a claim. On March 30, 1990, the court heard oral argument on the matter, and in a bench ruling denied the motion. On April 10, 1990, the government filed this Motion for Reconsideration. In the intervening months the parties have engaged in discovery with an unusual degree of court involvement. As it is hoped that this period is now over and the case may now proceed towards trial, the court feels this order would be useful and timely.

## DISCUSSION

The government has asked this court to reexamine: whether this court has jurisdiction over plaintiff's claim under the Contract Disputes Act (CDA) and whether Wausau has privity of contract with the Navy under either the old agreement between the Navy and Kingsway, or the takeover agreement between the Navy and Wausau.

As grounds for reconsideration, the government relies upon *Ransom v. United States*, 900 F.2d 242 (Fed.Cir.1990), which was issued on April 5, 1990, several days after the court's bench ruling. The government claims that the case holds that the CDA does not provide jurisdiction over the instant case. Specifically, it asserts that *Ransom* stands for the propositions that there can be no contract, express or implied, between the government and a surety for the purposes of the CDA, nor can Wausau have privity to the contract between the original contractor and the government.

In *Balboa Ins. Co. v. United States*, 775 F.2d 1158, 1160 (Fed.Cir.1985), the Federal Circuit held that there was a possibility of a contract existing between the surety and the government. However, the court also pointed out that *Balboa* did not stand for the proposition that a contact existed just because the government contracted with the principal of the surety. The case did not discuss the requirements to find such intent. Wausau, however, does seem to allege some intent. In *Ransom*, the Federal Circuit held that a surety relationship does not give rise *automatically* to a contract between a surety and the government. The government does not have a duty to inform the surety of any problems with the contractor nor is it required to divert progress payments to the surety in the absence of notification from the surety that the contractor has defaulted. Once the surety has notified the government, it can assert an equitable claim of subrogation. In *Ransom*, the plaintiff did not allege notice to the government. In the instant case, Wausau arguably does claim notice. Complaint at ¶¶ 38, 40.

### *Meaning of "Contractor"*

The CDA and associated case law do not definitively indicate whether the act specifically permits or prohibits sureties from suing under it. *See* 41 U.S.C. § 609(a)(1) (1988). Section 609 permits "contractors" to make direct access appeals to the Claims Court on contracting officers' decisions. Under section 601 a contractor is "a party to a Government contract other than the Government." 41 U.S.C. § 601(4) (1988). A contract can be express or implied and

for, *inter alia,* services. 41 U.S.C. § 602(a)(2) (1988).

It is possible that the take-over agreement between Wausau and the Navy would make Wausau a contractor with respect to claims arising out of that contract.[1] However, for Wausau's claims under the original contract between Kingsway and the Navy, there must be an implied contract between the Navy and Wausau, Wausau must be subrogated to Kingsway, or the take-over agreement must encompass the prior contract's rights and obligations.

In *Travelers Indem. Co. v. United States,* 16 Cl.Ct. 142 (1988), this court found an implied contract with the government in a case similar to the one at bar. *Id.* at 150. To have an implied-in-fact contract there must be a meeting of the minds, "which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Russell Corp. v. United States,* 537 F.2d 474, 210 Ct.Cl. 596, 609 (1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977).

Wausau appears to base three counts of its complaint on subrogation and an implied contract arising out of the original contract. It requests damages for payments made after the Navy had actual or constructive notice of Kingsway's difficulties. It also claims that the Navy abused its discretion in not terminating the contract sooner. The Navy disputes notice, actual or constructive.

Wausau's fourth count appears to be grounded both in the original contract and in the take-over agreement. The count concerns overpayments which the government paid to Kingsway and its assignee. The government disputes Wausau's contention that the take-over agreement makes Wausau a completion surety. A trial should bring out all of the relevant facts necessary for a determination as to that agreement's scope.

*Privity*

Closely linked with jurisdiction under the CDA is the issue of Wausau's privity with the government. *Balboa,* at 1160. Privity must be looked at from two perspectives: the privity between the government and the surety through the take-over agreement; and the privity between those same parties through the original contract. If the surety is a completion surety there is privity through the take-over agreement and claims arising out of it are covered. *Travelers Indem. Co.,* at 153.

Privity of contract between the government and the surety through the principal is unsettled in both the Claims Court and Federal Circuit. *Balboa* considers a suretyship "a three-party agreement." *Id.* at 1160; *accord Travelers Indemnity Co.,* at 152. However, in *Ransom* the Federal Circuit appears to move away from its holding in *Balboa. Ransom,* at 245. Unless Wausau can show that it and the Navy intended a contract as to the rights and obligations of the original contract privity may only be available from the equitable doctrine of subrogation.[2]

Retained funds would likely go to the completion surety. Non-retained funds would not necessarily belong to the surety. There are several factors in determining government liability for disbursing non-retained funds.[3] If Wausau properly warned

---

1. At oral argument on August 23, 1990 the government alleged that the takeover agreement was not a "contract" under the CDA, and did not make Wausau a completion surety. The court has not decided whether the take-over agreement is a contract under the statute. However, as a matter of law, the court can not at this time say that it is not. The questions of the contract's scope and Wausau's completion surety status must also be decided in light of the evidence to be adduced at trial.

2. It is possible that subrogation, an equitable concept, is beyond the CDA's scope. The court has provided Wausau with the opportunity to amend its complaint. It has chosen not to do so.

3. The standards are listed in *Balboa.* For an application of the *Balboa* criteria for abuse of discretion, *see Ohio Casualty Ins. Co. v. United States,* 12 Cl.Ct. 590, 594–96 (1987) (showing egregious behavior of contractor and government's abuse of discretion in not timely terminating contract).

the government about Kingsway the government might have become a stakeholder, making the government liable for any improper payments. This issue also must be determined at a trial.

### CONCLUSION

The court therefore holds that the government has not shown that this court lacks jurisdiction to entertain this claim. Indeed, the law seems to indicate otherwise. Further, there are factual issues relating to both the original agreement and the takeover agreement, which may affect the court's ultimate determination of jurisdiction as well as the merits of the case. Further, the court can not conclude as a matter of law that no privity exists between the parties with respect to either of the agreements. Therefore, the government's motion is DENIED.